# UNITED STATES DISTRICT COURT

for the

Southern District of California

FILED

MAY 30 2019

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>LG Smartphone<br>IMEI: 356233-89-128316-5<br>Model Number: LM-X210MA | )<br>)<br>)   Case No.
)
)       **19MJ2251**
) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the _____Southern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 8:1324(a)(2)(B)(ii);18:2 &<br>8:1324(a)(2)(B)(iii) | Bringing in Aliens for Financial Gain & Bringing in Aliens Without Presentation |

The application is based on these facts:

See attached Affidavit of Special Agent Jason Palmer

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Special Agent Jason Palmer, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 5/30/19

*Judge's signature*

City and state: San Diego, CA

Honorable Judge Barbara L. Major
*Printed name and title*

## **ATTACHMENT A**

PROPERTY TO BE SEARCHED

The following property is to be searched:

>LG Smartphone
>IMEI: 356233-89-128316-5
>Model Number: LM-X210MA
>(**Target Device**);

**Target Device** is currently in the possession of Customs and Border Protection Otay Mesa Vault.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the cellular/mobile telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone for evidence described below. The seizure and search of the cellular/mobile telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular/mobile telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of November 12, 2018, up to and including January 12, 2019:

a. tending to indicate efforts of human smuggling from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate human smuggling;

c. tending to identify co-conspirators, criminal associates, or others involved in human smuggling;

d. tending to identify travel to or presence at locations involved in human smuggling, or some other indicia of criminal activity from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of 8 U.S.C. § 1324(a)(2)(B)(ii) (bringing in aliens for financial gain) or 8 U.S.C. § 1324(a)(2)(B)(iii) (bringing in aliens without presentation.)

## AFFIDAVIT

I, JASON PALMER, being duly sworn, hereby state as follows:

## INTRODUCTION

1. This affidavit supports an application for a warrant to search the following: an LG Smartphone, IMEI: 356233-89-128316-5, Model Number: LM-X210MA ("**Target Device,**") described in Attachment A (incorporated by reference herein), which was seized from AMANDA SAMS at the San Ysidro Port of Entry on January 11, 2019, pursuant to the investigation of her criminal case in which she is charged by indictment with violating Title 8, U.S.C. Section 1324(a)(2)(B)(ii) (Bringing in Aliens for Financial Gain), and Title 8, U.S.C. Section 1324(a)(2)(B)(iii) (Bringing in Illegal Alien(s) Without Presentation).

2. The **Target Device** is presently stored at Customs and Border Protection Otay Mesa Vault.

3. I seek authority to search the **Target Device** for, and seize, evidence of crimes, specifically, violations of 8 U.S.C. § 1324(a)(2)(B)(ii) (bringing in alien for financial gain) and 8 U.S.C. § 1324(a)(2)(B)(iii) (bringing in aliens without presentation), as described in Attachment B (incorporated herein by reference) for the time period November 12, 2018 through January 12, 2019. Based on the information below, there is probable cause to believe that a search of the **Target Device** will produce evidence of the aforementioned crimes, as described in Attachment B.

4. The information contained in this affidavit is based upon my experience and training, consultation with other federal, state, and local law enforcement agents. The evidence and information contained herein was developed from interviews and my review of documents and evidence related to this case. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Device**, it does not contain all of the information known by me or other federal agents regarding this investigation, but only contains those facts believed to be necessary to establish probable cause. Dates and times are approximate.

1

## EXPERIENCE AND TRAINING

5. I am a Special Agent for the Homeland Security Investigations, U.S. Immigration and Customs Enforcement, and have been employed by HSI since 2001. I am currently assigned to the Human Smuggling/Trafficking Unit, San Diego, California. I have been assigned to the Human Smuggling/Trafficking Unit for approximately three years.

6. As part of my daily activities with the Human Smuggling/Trafficking Unit, I investigate criminal violations related to human smuggling, including the smuggling of aliens into the United States from Mexico. I have participated in approximately 15-20 alien smuggling investigations. I have also worked narcotics and narcotics smuggling investigations since 2002. In the course of these investigations, I have experience in obtaining search warrants, including search warrants for cellular phones. My experience in obtaining and executing search warrants for cellular phones dates back over ten years. I have obtained search warrants to search cellular phones in both alien and drug smuggling investigations. I have also worked with other agents with extensive experience in human smuggling investigations, and I have had training in the methods used by smugglers to bring persons into the United States contrary to law. This training has included the use of cellular and digital telephones and other electronic devices used by smuggler in the normal course of their illicit activities.

7. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in alien and narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

    a.    Smugglers will use cellular/mobile telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

    b.    Smugglers will use cellular/mobile telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

    c.    Smugglers and their accomplices will use cellular/mobile telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

d. Smugglers will use cellular/mobile telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

e. Smugglers will use cellular/mobile telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings.

f. Smugglers and their co-conspirators often use cellular/mobile telephones to communicate with load drivers who transport their cargo and/or proceeds.

g. The use of cellular telephones by conspirators or smugglers tends to generate evidence that is stored on the cellular telephones, including, but not limited to emails, text messages, photographs, audio files, videos, call logs, address book entries, IP addresses, social network data, and location data.

8. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in human smuggling/trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I know based upon my training, education, and experience investigating these conspiracies that searches of cellular/mobile telephones yields evidence:

a. tending to indicate efforts to smuggle humans from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate human smuggling from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in human smuggling from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in human smuggling from Mexico into the United States;

e. tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

9. On January 11, 2019, at approximately 10:30 P.M., Amanda Grae SAMS, a United States citizen, applied for entry into the United States from Mexico at the San Ysidro, California Port of Entry as the driver of a white Ford Expedition bearing California license plates. During inspection by a United States Customs and Border Protection (CBP) Officer, SAMS stated she was going to Modesto with nothing to declare from Mexico. The CBP Officer looked into the rear cargo area of the vehicle and noticed that a plastic cover sitting on top of the tire well was open and not seated on like it should have. The CBP Officer asked SAMS again if she had anything to declare and she stated a pack of cigarettes and dirty clothes. The CBP Officer noticed SAMS' voice tremble as she was talking to him. Inside the vehicle, the CBP Officer inspected the undercarriage of the vehicle and discovered a non-factory compartment where the spare tire should have been; inside the compartment he found a citizen of Mexico without lawful documents to enter or reside in the United States.

10. According to CBP reports, SAMS was arrested, advised of her *Miranda* rights and elected to make a statement without the benefit of counsel. SAMS denied knowledge of the person concealed in the vehicle. She admitted, however, she was going to be paid $4,000 US dollars to drive the vehicle across the border and leave at the first exit. SAMS admitted that she thought she was bringing drugs into the United States.

11. According to CBP reports and CPBO Curtis Arciaga, the **Target Device** was discovered and seized by CBP at the time of SAMS' arrest. The **Target Device** was retrieved from SAMS' personal property for the post-arrest interview. CBPO Arciaga

4

asked SAMS for permission to search the **Target Device**, and SAMS denied consent. SAMS then placed a phone call to her friend using the **Target Device**. Additionally, SAMS had to unlock the **Target Device** to place the call to her friend.

12. The alien was also interviewed, and admitted that she made the smuggling arrangements with an unknown person and agreed to pay $8,000 U.S. dollars.

13. On February 6, 2019, a federal grand jury returned an indictment charging SAMS with one count of brining in aliens for financial gain, in violation of 8 U.S.C. § 1324(a)(2)(B)(ii), and one count of bringing in aliens without presentation, in violation of 8 U.S.C. § 1324(a)(2)(B)(iii).

14. Accordingly, based upon my experience and training, consultation with other law enforcement officers experienced in human smuggling investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the human smuggling activities of AMANDA SAMS, such as telephone numbers, made and received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, pictures, audio files, videos and other digital information are stored in the memory of the **Target Device**.

15. Finally, human smuggling conspiracies require intricate planning and coordination. This often occurs days, weeks, or even months prior to the actual importation of the drugs into the United States. Coconspirators communicate with one another in efforts to ensure success in getting their valuable cargo to its destination within the United States. Given this, I request permission to search the **Target Device** for items listed in Attachment B beginning on November 12, 2018, up to and including January 12, 2019.

## METHODOLOGY

16. It is not possible to determine, merely by knowing the cellular/mobile telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular/mobile devices today can be simple cellular telephones and text message devices, can include

cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular/mobile service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular/mobile telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular/mobile telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

17. Following the issuance of this warrant, I will collect the subject cellular/mobile telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

18. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## CONCLUSION

19. Based on all of the facts and circumstances described above, there is probable cause to conclude that AMANDA SAMS used the **Target Device** to facilitate violations of 8 U.S.C. § 1324(a)(2)(B)(ii) (bringing in alien for financial gain) and 8 U.S.C. § 1324(a)(2)(B)(iii) (bringing in aliens without presentation.)

20. Because the **Target Device** was promptly seized during the investigation of AMANDA SAMS smuggling activities and has been securely stored, there is probable cause to believe that evidence of illegal activities committed by AMANDA SAMS continues to exist on the **Target Device**.

21. WHEREFORE, I request that the court issue a warrant authorizing law enforcement agents and/or other federal and state law enforcement officers to search the items described in Attachment A, and the seizure of items listed in Attachment B, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

JASON PALMER
Special Agent

Subscribed and sworn to before me this 30TH day of April, 2019.

THE HONORABLE BARBARA L. MAJOR
United States Magistrate Judge

7

## ATTACHMENT A

PROPERTY TO BE SEARCHED

The following property is to be searched:

> LG Smartphone
> IMEI: 356233-89-128316-5
> Model Number: LM-X210MA
> **(Target Device)**;

**Target Device** is currently in the possession of Customs and Border Protection Otay Mesa Vault.

## **ATTACHMENT B**

### ITEMS TO BE SEIZED

Authorization to search the cellular/mobile telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone for evidence described below. The seizure and search of the cellular/mobile telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular/mobile telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of November 12, 2018, up to and including January 12, 2019:

a. tending to indicate efforts of human smuggling from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate human smuggling;

c. tending to identify co-conspirators, criminal associates, or others involved in human smuggling;

d. tending to identify travel to or presence at locations involved in human smuggling, or some other indicia of criminal activity from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of 8 U.S.C. § 1324(a)(2)(B)(ii) (bringing in aliens for financial gain) or 8 U.S.C. § 1324(a)(2)(B)(iii) (bringing in aliens without presentation.)